

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00095-CV

_____

PATRICK GRIFFITH AND CONNIE GRIFFITH, Appellants

V.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellee

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 2011-20256-158

Before Walker, Gabriel, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Patrick and Connie Griffith appeal from a final judgment dismissing all of their claims against Federal National Mortgage Association (Fannie Mae) after granting Fannie Mae's motion for summary judgment. In three issues, the Griffiths contend that the trial court improperly granted summary judgment on their pleadings, that summary judgment was not proper on Fannie Mae's argument that it is shielded from liability because GMAC Mortgage, LLC, a nonsuited codefendant, acted properly under the Griffiths' deed of trust, and that summary judgment could not have been properly based on the Griffiths' release of their claims against GMAC. We reverse and remand.

### Background

The Griffiths took out a home equity loan in 2004. Their lender waived its right to require them to pay their taxes and home insurance into escrow on the condition that the Griffiths (1) pay their taxes and insurance on or before the due dates and (2) provide the lender with proof of payment. But the deed of trust also provided that if the Griffiths failed to pay their taxes and insurance when due, the lender could pay them on their behalf, and any amount so paid would be added as additional debt secured by the deed of trust. The deed of trust and waiver also provided that the lender could revoke the escrow waiver by written notice if the Griffiths ever defaulted. According to the Griffiths, sometime after origination, Fannie Mae became the holder of the note, and GMAC became the servicer.

2

The Griffiths were unable to pay their 2006 property taxes when they became due in January 2007. GMAC purportedly sent Connie[1] a notice in April 2007 stating that the taxes were past due, warning her that the failure to pay the taxes was a default, and giving her thirty days to pay the taxes and provide GMAC a receipt or to work out a payment plan and notify GMAC. GMAC warned Connie that if she failed to do so, it would "advance the delinquent taxes and penalties, and begin escrowing for future taxes." The Griffiths worked out a payment plan with the Denton County tax department, paying $500 in June 2007 and an additional $3,000 on August 6, 2007, thus reducing the amount owed to $1,061.75. GMAC nevertheless paid the remaining $1,061.75 in August 2007, set up an escrow account for taxes and insurance, and increased the Griffiths' monthly payment by $789.90.[2]

Over the next four years, the Griffiths attempted to contact and work with GMAC to determine the correct amount they owed and to dispute the establishment of the escrow account, all to no avail. In December 2010, GMAC filed a foreclosure application, and the Griffiths sued GMAC and Fannie Mae seeking a temporary restraining order to stop any sale. *See* Tex. R. Civ. P. 736.11(a). In their petition, the

---

[1]The Griffiths divorced in May 2008.

[2]GMAC's notice was dated April 17, 2007. The record casts no light on why GMAC waited until August 2007—well past the thirty days it gave Connie to provide proof of payment or the existence of a payment plan and after the Griffiths had already paid $3,500 of the 2006 property taxes, which GMAC must have known had occurred—to pay the remaining $1,061.75.

3

Griffiths alleged that GMAC was the servicer of their mortgage loan and that Fannie Mae was the current note holder. The Griffiths also raised claims for breach of contract, anticipatory breach of contract, violations of the Texas Debt Collections Practice Act and Finance Code, and common law defamation of their credit reputation. They further sought an accounting and a declaratory judgment that the "Defendants" had waived their right to foreclose.

While the suit was pending, GMAC filed for bankruptcy. The Griffiths filed a proof of claim, which they settled. As a result, they released GMAC (and other unidentified debtors referenced in an instrument not included in this record) from "any and all claims (as defined in section 101(5) of the Bankruptcy Code) and rights that the Griffiths assert, have or may have against the Debtors, their estates, the Borrower Trust, and the Liquidating Trust." The Borrower Trust is defined as the ResCap Borrower Claims Trust, and the Liquidating Trust definition references another document not in this record. After settling the claim, the Griffiths nonsuited GMAC in this suit.

Fannie Mae then filed a traditional motion for summary judgment raising three grounds: (1) that even though the Griffiths had named it as a defendant in their petition, all of their claims assert wrongdoing by GMAC only; therefore, "[a]bsent any concrete claims that Fannie Mae committed some independent wrongdoing against

4

them, [the Griffiths'] petition against Fannie Mae fails as a matter of law"[3]; (2) "[t]o the extent [the Griffiths] seek to hold Fannie Mae liable for GMAC's actions regarding property taxes, those claims fail as a matter of law" because the deed of trust authorized GMAC to pay those taxes; and (3) the Griffiths' "split the note" claim fails as a matter of law.[4]  Fannie Mae did not file a no-evidence motion for summary judgment.

The trial judge signed an order granting Fannie Mae's motion for summary judgment and dismissing the Griffiths' claims against Fannie Mae with prejudice.  Ten days later, the trial judge signed a final judgment also dismissing all of the Griffiths' claims against Fannie Mae with prejudice.  The Griffiths timely filed this appeal.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any

---

[3]Fannie Mae neither confirmed nor denied that it was the note holder.

[4]The Griffiths do not dispute the summary judgment on this theory, which they pleaded only as one of several reasons neither GMAC nor Fannie Mae was entitled to foreclose.  Fannie Mae moved for summary judgment on this ground only "[t]o the extent Plaintiffs make claims against [it] based on this widely discredited theory."

5

doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

In general, a trial court should not grant a summary judgment on a pleading deficiency that can be cured by amendment. *In re B.I.V.*, 870 S.W.2d 12, 13 (Tex. 1994). But it may properly do so if the party refuses to amend, if an amended pleading fails to state a cause of action, or when the pleading deficiency cannot be cured by an amendment. *See Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998).

## Summary Judgment Not Proper on Deficient-Petition Claims

In their first issue, the Griffiths argue that summary judgment on their pleadings was improper. Fannie Mae's first ground in its motion for summary judgment was that the Griffiths failed to assert any independent claims against it and had only asserted claims against GMAC; therefore, "[a]bsent any concrete *claims* that Fannie Mae committed some independent wrongdoing against [the Griffiths], Plaintiffs' *petition* against Fannie Mae fails as a matter of law." [Emphasis added.]

Fannie Mae did not file any special exceptions to the Griffiths' pleadings. The Griffiths' petition, which they attached to their summary-judgment response,[5] alleged

---

[5]Fannie Mae's argument that pleadings are not proper summary judgment evidence is not persuasive in this context; Fannie Mae's entire argument on this

a lender-servicer relationship between Fannie Mae and GMAC and contained the following paragraph:

### Ill. AGENCY AND RESPONDEAT SUPERIOR

Whenever in this petition it is alleged that a Defendant did, or failed to do, any act, thing and/or omission, it is meant that Defendant itself or its agents, officers, servants, employees, vice principals, or representatives either did or failed to do such act, thing and/or omission, and it was done with the full authorization or ratification of Defendant, and/or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, vice principals, or representatives and/or with actual and/or apparent authority of Defendant.

The Griffiths also alleged in their petition (1) that GMAC's attempt to provide notice of acceleration and foreclosure was ineffective because GMAC was not the holder of the note, seeking to halt the foreclosure because "GMAC, not the lender Fannie Mae, [was] attempting to obtain an order of foreclosure"[6] and (2) that both "Defendants" had waived the right to foreclose, citing authority that the *lender's* acceptance of payment after notice of default raises the issue of waiver. Throughout the petition, they use the plural "Defendants" in ascribing liability for each of their claims. They

_____

ground is that the petition itself did not allege an independent complaint against it as a matter of law.

[6]Property code section 51.0025 provides that a mortgage servicer may administer a foreclosure of property if it has entered into an agreement with the mortgagee giving it authority to service the mortgage and the notices of foreclosure disclose the servicer is "*representing* the mortgagee under a servicing agreement with the mortgagee," the name of the mortgagee, and either the mortgagee's address or the servicer's address. Tex. Property Code Ann. § 51.0025 (West 2014) (emphasis added).

further allege that although they tried to correct GMAC's errors in their loan account themselves, "Defendants [the servicer *and the lender*] have failed to correct the errors."[7]

Construing the Griffiths' petition liberally, as the law says we must in the absence of special exceptions, *see Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000), we hold that the petition alleges claims against Fannie Mae for GMAC's actions as its representative. Although the language in the petition is not a model of clarity, taken in context, we can discern that the Griffiths were not only attempting to forestall imminent and future foreclosure by GMAC, but also by Fannie Mae, and that they were seeking to attribute GMAC's wrongful conduct as the loan servicer to Fannie Mae as the lender on whose behalf GMAC was allegedly servicing the loan. In fact, Fannie Mae relies on the alleged propriety of *GMAC*'s payment of the past due property taxes as a defense to the Griffiths' claims. At the very least, the Griffiths' petition could be amended to more clearly state that GMAC's allegedly wrongful actions were taken in a representative or agency capacity on Fannie Mae's behalf.

In its brief, Fannie Mae argues that the Griffiths "produced no evidence that GMAC acted as [its] agent," that it "identified record evidence that it had no independent involvement with the Griffiths, and [that] the Griffiths offered no

---

[7]The Griffiths' specific factual allegations against Fannie Mae distinguish the pleadings in this case from those in *Bos v. Smith*, No. 16-0341, 2018 WL 2749714, at *9 (Tex. June 8, 2018).

evidence to controvert it." It also asserts in a footnote that its "motion turned on record evidence, not the pleadings." But these assertions directly conflict with the record. Fannie Mae did not move for summary judgment on the ground that, as a matter of law, it did not engage in any independent conduct as to the Griffiths, nor did it seek a no-evidence summary judgment on the issue of agency. Instead, it moved for summary judgment on the ground that *the Griffiths did not allege* it had committed any independent conduct against them and that *their petition* failed as a matter of law. We cannot uphold summary judgment on a ground not raised. *See* Tex. R. Civ. P. 166a(c); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010).

We hold that the trial court erred by granting summary judgment and dismissing all of the Griffiths' claims on Fannie Mae's first ground. We sustain the Griffiths' first issue.

**Summary Judgment Not Proper Because of GMAC's Payment of Taxes**

In its second ground for summary judgment, Fannie Mae argued that GMAC properly paid the delinquent property taxes in accordance with the deed of trust because the Griffiths admit failing to pay them in full and because the Griffiths failed to notify GMAC with proof that they had entered into an agreement with the Denton County tax department. Therefore, Fannie Mae contends that it cannot be held liable for GMAC's "actions regarding property taxes."

The Griffiths' breach of contract claim is not based on the wrongful payment of the property taxes. Instead, the Griffiths allege that

9

- the "Defendants" deliberately or negligently delayed action and misled them about the amounts due on the note "to the point of foreclosure," thus violating the duty of good faith and fair dealing under the deed of trust;

- the "Defendants" waived the right to foreclose on the property; and

- the Griffiths "remain in default only because GMAC failed to provide [them] with an accounting and . . . failed to give [them] an opportunity to pay the past due installments before acceleration of the entire indebtedness."

These contentions do not depend on the invalidity of GMAC's initial payment of the taxes; instead, they complain about GMAC's post-tax-payment failure to assist the Griffiths in obtaining accurate information about their loan amount, giving them misleading information about their loan account, and taking actions showing a waiver of the right to foreclose. All of these alleged acts or omissions occurred after GMAC paid the taxes.[8]

The Griffiths' common law and statutory debt collection claims likewise do not depend on the validity of GMAC's payment of the property taxes. They claim that after GMAC paid the taxes, the "Defendants" used deceptive means to collect the debt, wrongfully attempted to foreclose, slandered their credit reputation, defamed

---

[8]We note that the initial lender's escrow waiver requires the lender to revoke the waiver in writing to establish an escrow account. The record is devoid of any express written revocation of the escrow waiver. The deed of trust does not provide for the automatic establishment of an escrow account when the lender pays past-due taxes, insurance, or other assessments; instead, it provides that the amount paid will be added to the amount due on the note.

their credit and exposed them to ridicule in the community, and imposed "numerous additional charges" on their account.

Finally, the request for a declaratory judgment that "Defendants" have waived the right to accelerate and foreclose and the request for an accounting do not hinge upon the validity of GMAC's payment of the Griffiths' delinquent property taxes in 2007. Therefore, the trial court erred by granting summary judgment on all of the Griffiths' claims on Fannie Mae's second ground for summary judgment. We sustain the Griffiths' second issue.

### Release of Claims Against GMAC Does Not Support Summary Judgment

In their third issue, the Griffiths argue—in an abundance of caution—that the trial court erred by granting summary judgment on all of Fannie Mae's claims to the extent that Fannie Mae sought summary judgment on the ground that the Griffiths' release of claims against GMAC also effected a release of their claims against Fannie Mae. Not only did Fannie Mae not move for summary judgment on that ground, it did not present any evidence that the release applied to it, so summary judgment would not have been proper for that reason. *See* Tex. R. Civ. P. 166a(c); *State Farm Lloyds*, 315 S.W.3d at 532. We sustain the Griffiths' third issue.

### Conclusion

Having sustained the Griffiths' three issues, we reverse the trial court's summary judgment on all of the Griffiths' claims except the part of their breach of contract claim pleading the "split the note" theory as an argument against foreclosure,

11

reverse the trial court's final judgment, and remand this case to the trial court for further proceedings consistent with this opinion.

/s/ Wade Birdwell
Wade Birdwell
Justice

Delivered: October 11, 2018